[Civ. No. 9034. Third Dist. May 2, 1957.]

CARMEN J. FASELLI, Appellant, v. SOUTHERN PA-
CIFIC COMPANY (a Corporation) et al., Respondents.

Chargin & Briscoe for Appellant.

Jones, Lane, Weaver & Daley and R. B. Daley for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment entered upon a defense verdict in a personal injury action.

The accident, which occurred at a railroad crossing in the city of Stockton, involved a collision between a car driven by appellant and a train of the Southern Pacific Company. The engineer was made a party defendant. We shall for convenience, however, refer to the Southern Pacific Company as the respondent herein. Respondent's train, composed of a diesel electric engine and from 30 to 40 cars, was approaching Weber Avenue from the south at 15 to 25 miles per hour. Appellant was driving in an easterly direction on Weber Avenue at a speed between 25 and 40 miles per hour. It was early in the morning and dark. The weather was clear. The street was dry. Appellant was familiar with the crossing and knew that there was no flagman on duty at that hour nor any wigwag signal. He also knew that the view of the track to the south was obstructed by a building on the southwest corner of the crossing. As he neared the crossing, he slackened his speed. He said he looked both to the left and to the right but did not see the train until he was 60 or 70 feet distant from the tracks. The train crew testified that the engine's bell was ringing. Appellant said he did not hear it, and that when he saw the train he applied his brakes. His automobile laid down skid marks for a distance variously estimated at from 58 feet to 69 feet. It came to an almost complete stop before striking the side of the train's engine. The fireman testified that he saw appellant's automobile when it was 60 or 70 feet from the crossing; that he assumed that it was going to stop as its speed was decreasing; that when he decided appellant's vehicle was not going to stop, he called to the engineer to apply the emergency brakes. The train came to a halt approximately 150 feet from the point of im-

pact. Appellant was not thrown from his vehicle and did not then appear to be hurt. However, there was evidence that he had suffered a disk injury to his back. There was also evidence that the injury he ascribed to this accident might have been suffered in a later accident.

Appellant's first contention in support of his appeal is based upon a misconception of the record. He asserts the court instructed the jury as to the prima facie speed limit for vehicles "traversing an obstructed grade crossing, which this crossing was, and then further instructed the jury in such a way as to imply that the prima facie speed limit also applied to the approach to the crossing. Apparently appellant failed to note that the trial court specifically told the jury: "You will note that this prima facie speed limit of 15 miles per hour is applicable 'when traversing a grade crossing' as distinguished from approaching it." In view of that specific instruction no implication could be drawn from the other instructions given that the prima face speed limit of 15 miles per hour applied to the approach to the crossing. Basing his further argument on the same misconception as to the record, appellant asserts that the "misleading instruction" serves to accentuate the impropriety of questions addressed to appellant during his cross-examination, which questions appellant says were so formed as to imply, if not to directly state, that the prima facie speed limit was 15 miles per hour for the last 100 feet traveled before he reached the obstructed crossing. We have read the cross-examination referred to and think it sufficient to say that it does not bear out the charges made against it. We also note that during the argument between counsel as to the form of questions, the court said: "I will instruct the jury as to what the law is with reference to obstructed intersections, and I will do it as simply and clearly as I can, and they can be governed by the law as I state it to them." In view of the charge thereafter given, these contentions of the appellant cannot be sustained.

Appellant next contends that the court committed error in the instructions given on the subject of prima facie speed limits. The instructions addressed to this subject were as follows:

"The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many miles an hour, is not proof either of negligence or of the exercise of ordinary care.

"Whether that rate of speed is a negligent one is a question

of fact, the answer to which depends on all the surrounding circumstances.

"The basic speed law of this state is as follows: 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.' A violation of this basic rule is negligence.

"The prima facie speed limit for any vehicle is 15 miles per hour when traversing a grade crossing of a steam, electric or street railway, if during the last 100 feet of the approach to such crossing the driver does not have a clear and unobstructed view of such crossing and of any traffic on such railway for a distance of 400 feet in both directions along such railway.

"You will note that this prima facie speed limit of 15 miles per hour is applicable 'when traversing a grade crossing' as distinguished from approaching it.

"You are instructed further that the law does not prescribe an absolute speed limit in terms of so many miles per hour which was applicable to the vehicle involved in this case. The law does, however, establish a prima facie speed limit of 15 miles per hour which may be applicable here if you find that during the last 100 feet of the approach to this crossing the driver did not have a clear and unobstructed view of the crossing and of any traffic on the railway for a distance of 400 feet in both directions.

"If you find that a prima facie limit of 15 miles per hour is applicable, then a speed not in excess thereof is lawful unless proved to be a violation of the basic speed law. Similarly, a speed in excess thereof, of the prima facie limit of 15 miles per hour, is unlawful *unless the proof establishes that such a speed under all the circumstances is not a violation of the basic speed law.* (Italics ours.)

"You will remember then, that proof of a speed in excess of a prima facie limit does not establish negligence as a matter of law, but negligence in this regard must be found by you as a question of fact under the court's instructions."

▪ Appellant contends that if the jury found appellant exceeding the statutory limit this instruction placed upon him the burden of disproving negligence. We think this contention must be sustained. Although the jury had been instructed that it was respondent's burden to prove its allegations that appellant had been negligent, yet when the court said that

speed in excess of the applicable prima facie limit was unlawful unless the proof established that it was not a violation of the basic speed law we think they could not have believed that the court was telling them that such proof had to come from respondent. We think it did not occur to the jury that when respondent had proved a prima facie unlawful speed it would then go forward to prove that such speed under the circumstances was not a violation of the basic speed law. The jury could only have understood that, having proved the unlawful speed, respondent could stop and that unless appellant then proved the speed was not in violation of the basic speed law he would stand convicted of the charge of negligence. We hold the instruction to have been in this respect erroneous and that it did shift the burden of proof unwarrantably.

■ This case presented the ever recurrent problem confronted by trial courts who are required to give instructions concerning speed limits under this state's prima facie speed law, and the trouble seems to arise principally when the trial courts include in their instructions matter contained in the second paragraph of section 511. That paragraph declares that speeds in excess of the prima facie specified limits are prima facie unlawful unless the *defendant* establishes by competent evidence that any such speed in excess of said limits did not constitute a violation of the basic speed law. The paragraph is applicable solely to criminal cases. (*Cavalli* v. *Luckett*, 40 Cal.App.2d 250 [104 P.2d 708]; *Westberg* v. *Willde*, 14 Cal.2d 360, 369 [94 P.2d 590].) "In such a case the burden is placed upon the defendant of proving that any speed in excess of these limits did not constitute a violation of the basic rule set forth in section 510." (*Akers* v. *Cowan*, 26 Cal.App.2d 694, 697 [80 P.2d 143].) Section 513 sets up a special statute applicable in civil actions and declares that in such actions "proof of speed in excess of any prima facie limit declared in section 511 hereof at a particular time and place shall not establish negligence as a matter of law but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence." ■ This leaves the burden of proving negligence in a civil action where it belongs, that is upon the party charging negligence, and notwithstanding such party has established speed in excess of the applicable prima facie limit yet the proof must establish negligence under the circumstances. ■ "It is proper under section 513 of the

Vehicle Code to give an instruction on the prima facie speed limit even though proof of speed in excess of that limit is not enough, standing alone, to show that the vehicle was being operated negligently.'' (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432, 439 [260 P.2d 63].) We think it also proper to instruct in accordance with the first paragraph of section 511 which provides that the speed of a vehicle operating not in excess of specified limits is lawful unless clearly proved to be in violation of the basic rule. This paragraph is merely a statutory admonition directed to the trier of fact as a guide. It is closely akin to the admonition addressed to triers of fact in cases where fraud has been charged, which rule is based upon strong presumptions of innocence and fair dealing and tells the triers of fact that before finding fraud to have been committed they should require one charging fraud to prove it by evidence that is clear and convincing. Such admonitory rules find their sole application in the trial court. But having given the first paragraph of section 511, and having stated the applicable prima facie limit, the substance of section 513 should be given, and there the matter should be dropped. The second paragraph of section 511, the criminal statute, ought never to be given in a civil case, neither verbatim nor in substance. ''It has been held repeatedly that the second paragraph of section 511 should not be included in an instruction given in a civil case, and that it is in irreconcilable conflict with the rule of section 513.'' (*Clark* v. *Pamplin*, 147 Cal.App.2d 676, 679 [305 P.2d 950]—see cases cited.)

 It remains to consider whether or not for the error contained in the instructions the judgment appealed from should be reversed. In this case there was little proof of negligence on the part of respondent. There was much proof that appellant was negligent and that his negligence was the sole cause of the collision. Appellant, knowing he was approaching the railroad track at an obscured intersection, was, according to the undisputed evidence, traveling at such a rate of speed that after he observed the train his car laid down skid marks estimated at from 58 to 69 feet in length. It appears there were four tracks across the intersection, and this also appellant knew. The engine with which he collided was on the second track from him in the direction in which he was going. The proof of negligence on the part of respondent was simply that, (1) notwithstanding the engine crew testified that the bell on the locomotive was ringing, the appellant said

he did not hear it, and, (2) there was testimony of speed on the part of the train of from 18 to 25 miles an hour. This speed was not shown to have been in excess of any law fixing a speed limit at that point. It is to be considered, along with the undisputed fact that the heavy train was brought to a stop within 150 feet of the point of impact. Also the jury was told that whether *any* speed was negligent was a question of fact, the answer to which depended on all the surrounding circumstances and that proof of a speed in excess of a prima facie limit does not establish negligence as a matter of law but that negligence in that regard must be found by the jury as a question of fact. Notwithstanding the seriousness of the error in instructions, it is our view that there has been no miscarriage of justice and that under the constitutional provision the judgment appealed from should be affirmed.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.