235 Cal.App.2d 331 (1965)
45 Cal. Rptr. 237
FLORENCE A. BECK et al., Plaintiffs and Respondents,
v.
JACK KESSLER, Defendant and Appellant.
Docket No. 22139.
Court of Appeals of California, First District, Division One.
June 24, 1965.
*333 Bacon, Mundhenk, Stone & O'Brien, Herbert Chamberlin and Jack M. O'Brien for Defendant and Appellant.
Thomas E. Feeney for Plaintiffs and Respondents.
SULLIVAN, P.J.
In this action for damages for personal injuries defendant appeals from an adverse judgment, entered on jury verdicts, in favor of plaintiff Florence A. Beck in the sum of $8,000 and plaintiff Mildred Pratt in the sum of $10,000.
On June 10, 1961, at about 3 a.m. plaintiffs were passengers in a taxicab en route from San Francisco to Daly City. The cab, southbound on Junipero Serra Boulevard, had stopped because of a red traffic control signal at the intersection of 19th Avenue when it was struck in the rear by an automobile driven by defendant. The weather was clear, the streets dry and the intersection well-lighted. On Junipero Serra Boulevard northbound traffic and southbound traffic were separated by a dividing strip or raised curbing. Plaintiffs' taxicab was stopped in the center lane of three southbound traffic lanes. There was no other traffic in the immediate area at the time. After the cab had been stopped in the above position for a few seconds, plaintiffs saw bright lights approaching them from the rear and then felt the sudden impact.
Defendant, called as a witness by plaintiffs under Code of Civil Procedure section 2055, testified that between 10 p.m. and midnight on June 9, 1961, he had a couple of beers at the Avalon Ballroom in San Francisco. After that he was at a bar for a few hours during which time he had a few more beers. At the time of the accident he was going to his home in South San Francisco. He could not remember whether the intersection was well-lighted or in which traffic lane he was driving. He could see the traffic lights at the intersection but could not recall what their color was at any time during the last half block up to the time of the collision. Nor could he remember whether there were any vehicles in the immediate area other than his own and the cab. He stated that he was driving "about the speed limit ... at the regular speed, 35 miles an hour"; that he was looking through his windshield which was clear; that there was nothing to prevent his seeing the cab; that he just kept driving at the same speed until he *334 was a short distance from the cab when he suddenly applied his brakes; that "As I seen it, I tried to avoid it, and I just grabbed  just grabbed the right hand of my car, just grabbed the end of it, and that's how the impact came"; and that the collision occurred with a loud crash, although he believed his car hit only the left corner of the cab "because that's all  I  I could, if I had to, turn that wheel a little bit more. I probably would have missed him."
At the conclusion of this examination by plaintiffs' counsel,[1] defendant left the stand. There was no redirect examination by defendant's own counsel. After brief testimony on recall of Mrs. Beck, plaintiffs rested. Defendant then rested without offering any evidence in defense. At the close of the evidence, plaintiffs made a motion for directed verdicts on behalf of plaintiffs and against defendant on the issue of liability which the court granted, advising the jury accordingly at that time[2] and subsequently so instructing them.[3]
The sole question which defendant raises on appeal is this: Did the court err in directing a verdict against defendant on the issue of liability? Plaintiffs urge us not to consider the question on the ground that defendant has waived his right to raise it on appeal by failing to object to the motion for a directed verdict and by acquiescing in the court's ruling thereon. [1] However, we are of the view that whatever may have been the antecedent proceedings, defendant's attack is directed at the court's instruction to the jury and that "An erroneous instruction can always be challenged on appeal." (Cummings v. County of Los Angeles (1961) 56 Cal.2d 258, 264 [14 Cal. Rptr. 668, 363 P.2d 900]; Rivera v. Parma (1960) 54 Cal.2d 313, 316 [5 Cal. Rptr. 665, 353 P.2d 273]; Barrera v. De La Torre (1957) 48 Cal.2d 166, 170 [308 P.2d 724] (cited by plaintiffs on another point); Valentine v. Kaiser Foundation Hospitals (1961) 194 Cal. App.2d 282, 290 [15 Cal. *335 Rptr. 26]; Guyton v. City of Los Angeles (1959) 174 Cal. App.2d 354, 361 [344 P.2d 910]; Code Civ. Proc., § 647.) We turn to the issue at hand.
[2] Applicable here are the following principles set forth in Walters v. Bank of America (1937) 9 Cal.2d 46, 49 [69 P.2d 839, 110 A.L.R. 1259]: "The trial court, in a proper case, may direct a verdict in favor of a party upon whom rests the burden of proof, in this case the plaintiff. [3] Substantially the same rules apply to directed verdicts in favor of plaintiffs as apply to such verdicts in favor of defendants. [Citations.] [4] A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party, if such a verdict has been rendered. [Citations.] In passing on the propriety of the trial court's action in directing a verdict, the doctrine of scintilla of evidence has been rejected in this state. [Citation.] [5] A motion for a directed verdict may be granted upon the motion of the plaintiff, where, upon the whole evidence, the cause of action alleged in the complaint is supported, and no substantial support is given to the defense alleged by the defendant. [Citations.]" (See also Parker v. James Granger, Inc. (1935) 4 Cal.2d 668, 678-679 [52 P.2d 226], cert. denied 298 U.S. 644 [56 S.Ct. 958, 80 L.Ed. 1375]; Transport Clearings-Bay Area v. Simmonds (1964) 226 Cal. App.2d 405, 418 [38 Cal. Rptr. 116]; Price v. Atchison, T. & S.F. Ry. Co. (1958) 164 Cal. App.2d 400, 408 [330 P.2d 933].)
Faced with this settled criterion, defendant claims that his own testimony is susceptible of the inference that he was not acting negligently. He argues that "Time and again the appellate courts of this state have applied and approved the rule that whether the operator of the rear car was negligent in colliding with the car ahead presents a question of fact and not of law" although in fairness it must be noted that at oral argument defendant's counsel stated to us that he did not hold to such thesis in all cases as an absolute rule of law.
[6] The applicable rule is stated by Justice Schauer in Gray v. Brinkerhoff (1953) 41 Cal.2d 180, 183-184 [258 P.2d 834]: "Whether or not defendant was guilty of negligence [citations] or plaintiff was guilty of contributory negligence [citations] is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men *336 following the law can draw but one conclusion from the evidence presented. [Citations.]" (See also Callahan v. Gray (1955) 44 Cal.2d 107, 111 [279 P.2d 963]; Hudson v. Rainville (1956) 46 Cal.2d 474, 477 [297 P.2d 434]; Pierce v. Black (1955) 131 Cal. App.2d 521, 525 [280 P.2d 913]; Tannyhill v. Pacific Motor Transport Co. (1964) 227 Cal. App.2d 512, 521 [38 Cal. Rptr. 774]; for examples of cases in which negligence was found to exist as a matter of law see: Gray v. Brinkerhoff, supra; Lawson v. Lester (1961) 191 Cal. App.2d 34, 36 [12 Cal. Rptr. 368];[4]Pierce v. Black, supra; Edlund v. Los Angeles Ry. Co. (1936) 14 Cal. App.2d 673, 675 [58 P.2d 928]; Christy v. Herbert M. Baruch Corp. (1933) 135 Cal. App. 355, 363 [27 P.2d 660].)
[7] It is implicit in the rule stated in Gray v. Brinkerhoff, supra, that whether or not reasonable men can draw but one conclusion of negligence from the evidence depends on the facts and circumstances of the particular case. [8] Generally speaking, the question of negligence as well as of contributory negligence and proximate cause are questions of fact for the determination of the trier of fact (Austin v. Riverside Portland Cement Co. (1955) 44 Cal.2d 225, 234 [282 P.2d 69]; Wahlgren v. Market Street Ry. Co. (1901) 132 Cal. 656, 663 [62 P. 308, 64 P. 993]; Nigro v. West Foods of California (1963) 218 Cal. App.2d 567, 573 [32 Cal. Rptr. 692]; Barry v. Bruce (1962) 200 Cal. App.2d 335, 337-338 [19 Cal. Rptr. 518]; Negra v. L. Lion & Sons Co. (1951) 102 Cal. App.2d 453, 458 [227 P.2d 916]) and, overall, the instances are rare where the question of defendant's negligence is not one of fact. Basically, the answer to the problem is found in a rational analysis of the evidence.
Thus in rear-end collision cases this court and other appellate courts have pointed out that whether the driver of the rear car was negligent in colliding with the car in front presents a question of fact rather than of law since it depends upon all the circumstances of the particular case. (Wohlenberg v. Malcewicz (1943) 56 Cal. App.2d 508, 513 [133 P.2d 12]; Oliver v. Boxley (1960) 181 Cal. App.2d 471, 474-475 [5 Cal. Rptr. 468]; Kramer v. Barnes (1963) 212 Cal. App.2d 440, 448 [27 Cal. Rptr. 895]; see also Elford v. Hiltabrand (1944) 63 Cal. App.2d 65, 74 [146 P.2d 510].) It has been said that "the mere fact that a vehicle is moving in close proximity to another one ahead of it, and keeping up with it, does not of *337 itself constitute negligence per se" (Gornstein v. Priver (1923) 64 Cal. App. 249, 255 [221 P. 396]), that it is not the law "that an automobile driver is necessarily guilty of negligence because he collides with the rear of another vehicle" (Elford v. Hiltabrand, supra), and that whether the driver of the rear car is negligent "almost invariably presents a question of fact ..." (Gornstein v. Priver, supra).
[9] On the other hand, generally speaking, there is a permissible inference of negligence from the fact of a rear-end collision requiring some explanation or excuse from the driver of the rear car. As we observed in Kramer v. Barnes, supra, 212 Cal. App.2d 440, 448 "a collision in which a following motorist collides with the rear end of a vehicle ahead is some evidence of negligence on the part of the following motorist. (Cartmill v. Arden Farms Co., 83 Cal. App.2d 787, 789 [189 P.2d 739]; Banes v. Dunger, 181 Cal. App.2d 276, 282 [5 Cal. Rptr. 278]; Gornstein v. Priver, supra, 64 Cal. App. 249, 255; Linde v. Emmick, 16 Cal. App.2d 676,682 [61 P.2d 338]; Wright v. Ponitz, 44 Cal. App.2d 215, 219 [112 P.2d 25]; Shannon v. Thomas, 57 Cal. App.2d 187, 194 [134 P.2d 522].)" [10] Particularly in those situations where the rear car has collided with a stopped or stationary vehicle, the courts have applied the doctrine of res ipsa loquitur and have held that an inference arises that the collision was caused by some negligent conduct on the part of the driver of the rear car, which the latter was thereupon required to rebut. (Persike v. Gray (1963) 215 Cal. App.2d 816, 819-820 [30 Cal. Rptr. 603]; Merry v. Knudsen Creamery Co. (1949) 94 Cal. App.2d 715, 721-722 [211 P.2d 905]; Slappey v. Schiller (1931) 116 Cal. App. 274, 276-277 [2 P.2d 577].) However, this does not necessarily mean that in such cases only one conclusion  that of the rear driver's negligence  can be drawn from the evidence, since the evidence may be in conflict as to how the collision occurred, or if not in conflict at least susceptible of conflicting inferences. (See Persike v. Gray, supra.) Nor does it necessarily mean that in a rear-end collision case the minds of reasonable men can never be impelled to but one conclusion, namely that the driver of the rear car was negligent.
Our task then is to determine whether, as the trial court ruled, the facts of the instant case induce but one conclusion, that of defendant's negligence or, as defendant argues, contain redeeming characteristics to be weighed and balanced by the trier of fact. [11] In so doing we are also cognizant of the rule applied in a number of California cases that "one *338 who does not see that which is clearly visible and would have been seen by one exercising ordinary care, as result of which a collision occurs, is guilty of negligence as a matter of law." (Italics added.) (Huetter v. Andrews (1949) 91 Cal. App.2d 142, 146 [204 P.2d 655]; Berlin v. Violett (1933) 129 Cal. App. 337, 340-341 [18 P.2d 737]; Holibaugh v. Ito (1937) 21 Cal. App.2d 480, 484-485 [69 P.2d 871]; Orbach v. Zern (1955) 138 Cal. App.2d 178, 181-182 [291 P.2d 120]; Leeper v. Nelson (1956) 139 Cal. App.2d 65, 68 [293 P.2d 111]; Westcott v. Hamilton (1962) 202 Cal. App.2d 261, 267 [20 Cal. Rptr. 677].)
[12] In the instant case, the evidence on the issue of negligence is not in conflict. The plain facts are that on a clear, dry night and on a well-lighted highway, presenting no involvement of other moving traffic, defendant collided with the taxicab which was lawfully stopped at the intersection and failed to stop his own car in time to avoid the collision. There is no evidence nor any claim that the cab caused the accident either by suddenly coming to a stop or by suddenly being driven into the path of defendant's car. (See Lawson v. Lester, supra, 191 Cal. App.2d 34, 36.) The cab was in the plain sight of defendant and he admitted that there was nothing to obstruct his view. Indeed the record is entirely barren of any evidence constituting any excuse or justification for defendant's conduct or affording any sound reason for defendant's failure to see the cab until he was virtually upon it. It is inconceivable that a person who is driving at the regular speed, who is looking ahead and can see the light regulating traffic at an intersection less than a block away cannot see a vehicle properly stopped at the intersection when his visibility is not impaired by any object, condition of the weather or poor lighting. Upon our inquiry at oral argument for any evidence in the record from which such excuse or justification could be validly inferred, defendant's counsel could only point to the skid marks laid down by defendant's car. These, however, like the collision itself, were, in the context of the testimony, further proof of negligence and provided no absolving circumstance for defendant's conduct. In our view reasonable men can draw only one conclusion from the evidence, namely, that defendant was negligent. We therefore conclude that the trial court acted properly in directing a verdict for plaintiffs on the issue of liability.
Our foregoing analysis and conclusion are in harmony with those made in Lawson v. Lester, supra, 191 Cal. App.2d 34 *339 cited by plaintiffs, where a station wagon in which plaintiff was riding was rear-ended by a truck. Defendant truck driver was following and gaining upon the more slowly moving station wagon, first saw it a quarter of a mile ahead, saw it slow down and signal for a left turn, but nevertheless collided into its rear just as the station wagon, having slowed down almost to a stop, was beginning to make its turn. There, as here, defendant's view was unobstructed. In that case, as here, there was no evidence or claim that the vehicle ahead suddenly came to a stop or suddenly turned into the path of the vehicle in the rear, thus causing the accident. Lawson upheld a directed verdict in favor of the plaintiff on the issue of liability, stating "there is no conflict in the evidence and the facts are such that but one legitimate inference can be drawn from the evidence, i.e., that appellant Lester was the only negligent party involved in the accident." (191 Cal. App.2d at p. 36.)
Defendant relies on the following cases involving rear-end collisions, some already mentioned by us, where the particular facts were deemed insufficient to establish negligence as a matter of law: Wohlenberg v. Malcewicz, supra, 56 Cal. App.2d 508, 513; Elford v. Hiltabrand, supra, 63 Cal. App.2d 65, 74; Turkovich v. Rowland (1951) 106 Cal. App.2d 445, 448 [235 P.2d 123]; Lowenthal v. Mortimer (1954) 125 Cal. App.2d 636, 638-639 [270 P.2d 942]; Karageozian v. Bost (1956) 139 Cal. App.2d 874, 877-878 [294 P.2d 778]; Aivazi v. Marcano (1960) 180 Cal. App.2d 792, 795-796 [4 Cal. Rptr. 584]; Oliver v. Boxley, supra, 181 Cal. App.2d 471, 474-475; Burke v. Bloom (1960) 187 Cal. App.2d 155, 161-162 [9 Cal. Rptr. 563]; Kramer v. Barnes, supra, 212 Cal. App.2d 440, 447; Persike v. Gray, supra, 215 Cal. App.2d 816, 819-820. As we have said, in the final analysis each case must turn on its own facts. In each of the above cases there was evidence susceptible of an inference that the driver of the rear car was not negligent, thus precluding a single, compelled conclusion of negligence. In Wohlenberg, Turkovich, Lowenthal, Karageozian, Aivazi, and Burke the leading car stopped suddenly; in Elford, Turkovich and Aivazi there was evidence that the negligence of the driver of the leading car caused the collision; in Oliver, the leading car whose driver was looking for a freeway exit, had slowed down to 5 miles an hour and was blocked from the following car's view until, an intervening car having suddenly pulled out, the driver of the following car saw the leading car for the first time only two car lengths ahead. In Kramer, *340 we reversed a summary judgment in favor of the defendant driver of the following car since his own affidavits stated that his car collided with the car in front (plaintiff's) thus furnishing some proof of negligence, presenting a triable issue of fact, and therefore failing to support the judgment. The question of defendant's negligence as a matter of law was not involved. In Persike, Division Three of this court declined to consider itself impelled to one conclusion of negligence since the evidence was in dispute as to how the rear-end collision occurred.
Finally, defendant invokes the presumption of due care (Code Civ. Proc., § 1963, subd. 4) as a vehicle for providing favorable evidence and thus creating a conflict. He claims that "His testimony discloses that something had eradicated from his memory many of the vital facts leading up to and culminating in the accident."
[13] As the Supreme Court recently pointed out in Brown v. Connolly (1965) 62 Cal.2d 391, 395-396 [42 Cal. Rptr. 324, 398 P.2d 596]: "The presumption of section 1963, subdivision 4, has been limited to certain types of situations. The basic rule is that once a person takes the stand to explain his conduct immediately prior to or at the time in question, he is no longer entitled to the presumption. (Laird v. T.W. Mather, Inc. (1958) 51 Cal.2d 210, 221 [331 P.2d 617].) The two areas in which the presumption is now allowed are actions for wrongful death (Anthony v. Hobbie (1945) 25 Cal.2d 814 [155 P.2d 826]; Westberg v. Willde (1939) 14 Cal.2d 360 [94 P.2d 590]; McBaine, Cal. Evidence Manual (2nd ed. 1960) § 1291, pp. 472-475; Witkin, Cal. Evidence (1958) §§ 65-67, pp. 84-86) and those cases where by reason of brain injury the party suffers from retrograde amnesia and cannot remember and testify concerning his conduct at and immediately before the accident (Scott v. Burke (1952) supra, 39 Cal.2d 388 [247 P.2d 313]; Kumelauskas v. Cozzi (1959) 173 Cal. App.2d 541 [343 P.2d 605]; McBaine, Cal. Evidence Manual, supra; Witkin, Cal. Evidence, supra).
[14] "A requirement for invocation of the presumption in amensia cases is that the loss of memory was induced by brain injury suffered as a result of the accident in question. (Kumelauskas v. Cozzi (1959) supra, 173 Cal. App.2d 541, 544, and cases cited.) It has further been held that the amnesia must be genuine and that this is a question for the trier of fact to determine. (Scott v. Burke (1952) supra, at p. 393; Hensley v. Harris (1957) 151 Cal. App.2d 821, 825 [312 P.2d 414].)"
*341 [15] Defendant's argument must fall. There is no evidence that he sustained a "loss of memory induced by brain injury suffered as a result of the accident in question." (Brown v. Connolly, supra.) Indeed, as we read defendant's testimony, there is no claim at all on his part of amnesia in the sense in which that term is used in Brown v. Connolly, supra, and related cases. Additionally, it should be noted that defendant offered no explanation of his conduct while under examination as an adverse witness although the nature of the questions afforded him ample opportunity to do so.
The judgment is affirmed.
Molinari, J., and Sims, J., concurred.
NOTES
[1] Covering only 13 pages in the reporter's transcript.
[2] The court stated: "There will be no further testimony other than what you have heard. The plaintiffs have made a motion before me for a directed verdict, and which I have granted. In other words, you will receive instructions from me that you are to bring in a verdict in favor of the plaintiffs and against the defendant Kessler only for such sum, if any, that you feel either of the plaintiffs is entitled to."
[3] The court included among its instructions to the jury, the following: "Now, as I instructed you, ladies and gentlemen, yesterday afternoon, and as I instruct you again now, you are to bring in a verdict in favor of each of the plaintiffs in this case and in a sum which you feel each of them is entitled. And that is subject to this qualification: that these injuries sustained by these plaintiffs were the proximate cause of [? were proximately caused by] the negligence of the defendant Kessler."
[4] Disapproved on other grounds in Cooke v. Tsipouroglou (1963) 59 Cal.2d 660 [31 Cal. Rptr. 60, 381 P.2d 940].